IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANTHONY VINCENT CARTMAN, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL ACTION NO. |
| | : | 1:10-CR-512-ELR-LTW-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:16-CV-4511-ELR-LTW |

## <u>ORDER AND FINAL REPORT AND RECOMMENDATION</u>

Movant is a federal prisoner who, pro se, challenges under 28 U.S.C. § 2255 his judgment of conviction. (Doc. 291.)[1] Respondent filed a brief opposing the motion, (doc. 301), and Movant filed a reply, (doc. 305). Movant also filed a motion for leave to expand the record with unidentified affidavits. (Doc. 307.) For the reasons discussed below, the undersigned denies the motion to expand the record and recommends that the § 2255 motion and a certificate of appealability be denied.

---

[1] All citations to the record are to case number 1:10-cr-512-ELR-LTW. The pages of some documents cited in this Report and Recommendation, including Movant's filings, are numbered differently from the numbering system created by the Court's electronic docketing system. For convenience and consistency, the Court cites the page numbers created by the docketing system.

I.    **Background**

In December 2010, a grand jury indicted Movant and three co-defendants for crimes regarding the illegal purchase of firearms. (Doc. 1.) The original indictment charged Movant with one count of conspiring with his co-defendants to knowingly cause false representations to be made with respect to information required to be kept in the records of a federal firearms licensee ("FFL") and seven counts of knowingly causing such false representations to be made. (*Id.*)

Movant was a fugitive at the time the indictment issued. Law enforcement arrested him in New York in August 2011, and he first appeared before this Court on August 22, 2011. (Docs. 79, 80.)

On May 8, 2012, two weeks before trial began, a grand jury issued a superseding indictment. (Doc. 151.) That indictment charged Movant with the same crimes as the original indictment and added five counts of unlawful possession of a firearm by a convicted felon. (*Id.*) The firearms at issue in those five counts were the same ones at issue in the counts charging false representations in the records of the FFLs. (*Id.*) All of the firearms at issue in this case were Taurus handguns. (*Id.*)

The conspiracy count alleged a violation of 18 U.S.C. § 371, the federal conspiracy statute. (Doc. 151 at 1-9.) The Court refers to that charge as simply the

2

conspiracy charge.   The seven counts of causing false representations to be made in FFL records alleged violations of 18 U.S.C. § 924(a)(1)(A), which makes such conduct a crime, and 18 U.S.C. § 2, which prohibits aiding and abetting the commission of a crime.  (*Id.* at 9-13.)  The Court refers to those charges as the "FFL Charges."   The five counts of unlawful possession of guns by a felon alleged violations of 18 U.S.C. § 922(g), which makes such possession a crime.  (*Id.* at 14-16.) The Court refers to those charges as the "Possession Charges."

Attorney Samuel Little was appointed to represent Movant in this case.  (Doc. 82.)  When Movant quickly expressed reservations about Little and a possible desire to proceed pro se, the undersigned held hearings in September 2011.  (Docs. 243, 273.)  At the second of those hearings, Respondent's counsel informed Movant and the Court that Respondent intended to seek a superseding indictment that would add the Possession Charges and significantly increase the maximum sentence if Movant was convicted.  (Doc. 273 at 3-4.)  Movant stated at that hearing that he wanted Little to represent him.  (*Id.* at 7-8, 12.)

In February 2012, Movant filed documents pro se suggesting that he wanted new counsel, so the undersigned held another hearing.  (Doc. 244.)  Movant indicated at that hearing that he wanted to continue with Little as his lawyer.  (*Id.* at 13-14.)

3

Two weeks before trial in May 2012, Little filed a motion to withdraw because Movant refused to communicate with him. (Doc. 149.) The Court held a lengthy hearing on that motion on May 9, 2012. (Doc. 245.) The Court concluded that Little would continue to represent Movant and later issued an Order explaining why, under *Faretta v. California*, 422 U.S. 806 (1975), the Court found that Movant had not validly waived his right to counsel. (*Id.*; Doc. 248 at 4-21.) The trial was then conducted from May 21, 2012, to May 24, 2012. (Docs. 217 through 219.)

In the Order just referenced, the Court summarized the trial evidence:

> [Movant] was tried before a jury, convicted, and sentenced to 137 months in prison. The facts of the case were fairly simple. As found by the jury, [Movant], along with his co-conspirator, Tchaka Shields, exploited two women with whom [Movant] was romantically involved, to make straw purchases of firearms in the Atlanta area. [Those women were Casita Q. Washington and Erron Denise Love.] Movant could not legitimately make these purchases, as he was a convicted felon, having previously been convicted of conspiracy to distribute crack cocaine and of being a felon in possession of a firearm.

> The evidence indicated that [Movant] and his co-conspirator [Shields] purchased these guns in order to sell them in the Boston area, which they did. Based on this conduct, [Movant] was convicted of causing false representations as to the true purchaser of firearms to be recorded in a federal firearms transaction record, as well as being a felon in possession of these firearms. [Movant's] three co-defendants pled guilty reasonably quickly after the filing of the indictment. [Movant], however, remained a fugitive for eight months, and his proceedings began thereafter.

4

(Doc. 248 at 1-2.)

Only Respondent presented evidence at trial.  That evidence consisted of twenty-one witnesses, documentation of all the gun purchases, three of the guns, photos of a few of the other guns, maps of the area where seven of the guns were recovered, written and electronic communications between Movant and Washington and Love, Love's and Washington's written statements to law enforcement, and other documents.  (*See* Doc. 217 at 2; Doc. 218 at 2-3; Doc. 219 at 2; Doc. 257.)  The witnesses were Washington and Love, the three FFLs from whom the guns were purchased or attempted to be purchased, managers of the five locations where the guns were purchased at gun shows, five Boston police officers who recovered five of the guns, a Massachusetts State Trooper who recovered one of the guns, a Rhode Island State Trooper who recovered one of the guns, two DeKalb County police officers, a Facebook employee who authenticated electronic messages between Movant and Love, and the agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who led the case investigation.  (Docs. 217 through 219.)  The ATF agent, Jason Stricklin, testified twice and sat with Respondent's counsel throughout the trial. (Doc. 218 at 159-70; Doc. 219 at 20-62.)

5

The first two FFL charges in the superseding indictment were for Love's and Washington's attempted purchase of guns at The Gun Store in Doraville, Georgia. (*Id.* at 9-10.) Love testified that on March 11, 2009, Movant gave her money to buy guns from that store and accompanied her to the store. (Doc. 218 at 191-94; Doc. 257-1.) Washington testified that on March 12, 2009, Movant took her to the store, gave money to Shields that Shields later gave her, and asked her to buy guns for Shields. (Doc. 218 at 60-64, 90-91; Doc. 257-2.) The FFL at The Gun Store testified that the store refused to sell guns to Love and Washington on those occasions. (Doc. 218 at 29-30.) That FFL then reported the attempted purchases to the ATF, which initiated the investigation that led to this case. (*Id.* at 30-32.)

The other five FFL charges were for Love's and Washington's successful purchases of guns from gun shows. Washington testified that she went to a gun show with Movant on March 14, 2009, where she bought three guns Movant selected with money that Movant gave her. (Doc. 218 at 64-66, 83, 89, 94; Docs. 257-5, 257-6, 257-19.) Washington gave those guns to Movant. (Doc. 218 at 90.) Movant asked Washington to buy more guns after that date, telling her that he and Shields could make money by selling the guns on the street. (*Id.* at 66-67.) Washington refused. (*Id.*)

6

Around the same time, in April and May 2009, Movant told Washington that he had traveled to Boston and that he had an automobile accident in Boston. (*Id.* at 72-73.) In September 2009, while he was in jail in Cherokee County, Georgia, Movant wrote Washington a letter, which she testified she received.[2] (*Id.* at 74-75, 86, 93; Doc. 257-8.) In that letter, which was admitted as evidence at trial, Movant told Washington he needed more money for when he got out of jail, was waiting on money from "that boston accident," and that he "[g]otta hit the gun show and fill two orders." (Doc. 257-8 at 1.)

Love testified that she went to four gun shows and bought a total of fifteen guns at those shows at Movant's request. (Doc. 218 at 188, 194, 212, 232.) Love purchased three guns at each of three gun shows on March 21, 2009, April 18, 2009, and April 26, 2009. (*Id.* at 187-91, 194-98.) Movant and Shields accompanied Love on those three occasions, Shields gave Love the money and told her which guns to buy, and Love gave the guns to Shields upon exiting the gun shows. (*Id.*; Docs. 257-12 through 257-16.) Love purchased six guns at a gun show on May 3, 2009,

---

[2] Several witnesses testified, and Movant personally confirmed in a conversation with the Court during trial, that Movant was arrested in New York on July 27, 2009, and sent to the Cherokee County Jail the following month, where he stayed until October 29, 2009. (Doc. 218 at 132-33, 164-65; Doc. 219 at 81.)

7

accompanied by only Shields. (Doc. 218 at 198-200; Docs. 257-17, 257-18.) Love never saw any of the fifteen guns after giving them to Shields outside the gun shows. (Doc. 218 at 199-200.)

Love testified that she went to Boston with Movant and Shields, in Movant's van, on three to four occasions between March and May 2009 and that each trip lasted three to four days. (Doc. 218 at 200, 224.) Before making those trips, Movant told Love they were going to Boston so Shields could show the guns to people there. (*Id.* at 201.) Love did not see any guns on any of those trips and was not with Movant throughout the time in Boston. (*Id.* at 201-04, 228-30.) Movant took duffel bags on those trips, but Love did not know what was in those bags. (*Id.*)

Law enforcement officials from Massachusetts testified that they recovered in Boston, during traffic stops or in response to police reports, five of the guns Love bought and one of the guns Washington bought, and records confirmed they were the same guns. (*Id.* at 97-149, 153-58; Docs. 257-7, 257-15, 257-19.) A law enforcement official from Rhode Island testified that he recovered another of the guns Love bought in a traffic stop in Rhode Island, and records confirmed it was the same gun. (Doc. 218 at 149-53; Doc. 257-14.)

8

Love testified that Movant told her to falsely report to the police that the guns she purchased at the gun shows had been stolen. (Doc. 218 at 186-88, 228, 230-31.) Love reported the guns purchased on March 21, 2009 as stolen. (*Id.*)

Love testified that when she bought the guns in 2009, Movant and Shields were living together in DeKalb County, apart from Love. (*Id.* at 185.) At that time, Love was in a close and intimate relationship with Movant going on approximately seventeen years. (*Id.* at 185, 189, 198.) Washington also testified that Movant lived with Shields in DeKalb County in March 2009 and that she visited Movant at his and Shields' home. (*Id.* at 55-56, 59-60, 69-70; Doc. 257-31.) DeKalb County police officers testified that they responded to two reports of burglary at the home where Movant and Shields lived, once in 2007 and again in 2008, and that Movant was present on the second occasion. (Doc. 219 at 4-7.)

The jury convicted Movant of all counts of the superseding indictment. (Doc. 170.) Before sentencing, Movant filed documents demanding to proceed pro se. (Doc. 185.) In a series of Orders, the Court informed Movant it would appoint new counsel for him for sentencing if he wished, informed him of pre-sentencing procedures, and gave him additional time to make a decision on representation. (Docs. 187, 189, 202, 203, 204.)

9

The Court ultimately allowed Movant to represent himself at the sentencing hearing, which occurred on February 13, 2013. (Doc. 253.) "Prior to that hearing, the [Court] read the entire trial transcript to ensure that any enhancements recommended in the PSR [Presentence Investigation Report] could be supported by the record."[3] (Doc. 248 at 25.)  Given the numerous motions Movant filed pro se before and after the sentencing hearing, the Court entered judgment on June 5, 2013, and issued an Order addressing those motions the same day.  (Docs. 248, 249.)

The Court sentenced Movant to seventeen months' imprisonment on the conspiracy charge and FFL Charges and an additional 120 months on the Possession Charges, for a total of 137 months.  (Doc. 249.)  The Court denied Movant's motions, including his motion for dismissal based on a violation of his right to a speedy trial. (Doc. 248.)

Movant filed a notice of appeal. (Doc. 251.)  The U.S. Court of Appeals appointed attorney David M. Stewart to represent Movant on appeal.  (Docs. 277, 278.) Movant claims in his § 2255 motion that he never accepted Stewart and that he

---

[3] "The Court" here refers to the Honorable Julie E. Carnes, who presided over this case through trial, sentencing, and entry of judgment.

filed, pro se, his own appellate brief that raised many more issues than the brief
Stewart filed. (Doc. 291-1 at 16-18, 27-31.)

Stewart raised two issues on appeal. *United States v. Cartman*, 607 F. App'x
888, 889 (11th Cir. 2015). Those issues were that Movant was improperly denied the
right to represent himself at trial, in violation of the Sixth Amendment to the U.S.
Constitution, and that his sentence was unreasonable because of the disparity between
his sentence and Shields' sentence.  *Id.*   The Court of Appeals rejected both
arguments, finding that Movant "did not validly waive his right to counsel," the Court
"did not err in denying [Movant] the right to self-representation," and Movant's prison
sentence "was substantively reasonable" despite being 100 months greater than
Shields' sentence. *Id.* at 890-91.

Movant raises several claims in his § 2255 motion.  (Docs. 291, 291-1.)
Movant discussed many claims multiple times throughout his lengthy motion. (*Id.*)
The Court organizes the claims as follows, with citations to the motion:

1.   Movant is actually innocent because Respondent neither alleged nor
     proved that there was United States territorial jurisdiction over this case
     or that the Court had in personam jurisdiction over Movant (Doc. 291 at
     20-25, 33-41, 52-54, 63);

2.   Little did not have authority to represent Movant and was forced on him
     just before trial (Doc. 291 at 54-56; Doc. 291-1 at 14-15, 19-25);

11

3.   Movant's right to a speedy trial was violated because the superseding indictment issued more than seventy days after his arrest, and he was tried too soon because trial began less than thirty days after the superseding indictment issued (Doc. 291-1 at 26-27);

4.   Movant was improperly denied release on bond because he did not have a history of escape (Doc. 291-1 at 12-13);

5.   The evidence presented at trial was insufficient to support the convictions on the Possession Charges (Doc. 291 at 25-33, 46-49; Doc. 291-1 at 1-5);

6.   The Court's jury instructions were improper because they allowed for conviction of the Possession Charges even if Movant possessed the guns simultaneously and because they did not instruct the jury on the essential elements of jurisdiction and dominion, control, or ownership of guns (Doc. 291 at 42-45, 49-51, 63-65);

7.   The Court violated the Federal Rules of Evidence by allowing testimony at trial from witnesses other than Washington and Love while denying Movant the opportunity to present witnesses, by allowing Love and Washington to testify about Movant's past conduct, and by admitting evidence of Movant's written communications with Washington and Love (Doc. 291-1 at 6-8, 9-11);

8.   Respondent improperly vouched for ATF Agent Jason Stricklin by having him both testify and sit with Respondent's counsel during trial (Doc. 291 at 62);

9.   At trial, Respondent's counsel improperly stated in his opening statement that seven guns were recovered at crime scenes and improperly referred in his closing argument to violent drug gangs (Doc. 291-1 at 9);

12

10. The Court erred by not conducting a hearing pursuant to *Pate v. Robinson*, 383 U.S. 375 (1966) to determine whether Movant was competent to represent himself at sentencing (Doc. 291-1 at 51-53);

11. The Court improperly enhanced, under the U.S. Sentencing Guidelines, Movant's sentence for trafficking guns, when Movant was not charged with, and there was no evidence of, such trafficking (Doc. 291 at 66; Doc. 291-1 at 1, 10);

12. Movant's prior convictions in two state cases were improperly used as the basis for the Possession Charges and to enhance his sentence because he was not represented by counsel in the first case (Doc. 291 at 58-61; Doc. 291-1 at 56-61);

13. The term of court expired before judgment because more than ninety days passed between the sentencing hearing and entry of judgment (Doc. 291 at 57);

14. Little rendered ineffective assistance before and during trial, including by not raising most of the claims listed above (Doc. 291 at 28, 45, 54; Doc. 291-1 at 13-16);

15. Stewart rendered ineffective assistance by not raising on appeal Little's ineffectiveness or any of the other claims listed above (Doc. 291 at 28, 54; Doc. 291-1 at 13, 16-18);

16. The Court violated Movant's constitutional right to access the courts by not docketing many of his post-trial habeas corpus filings, and the court of appeals violated that right by not accepting the appellate brief Movant personally filed (Doc. 291-1 at 27-31, 54-55, 62-66); and

17. Movant's pretrial confinement in administrative segregation at the federal prison in Atlanta was illegal and constituted cruel and unusual punishment (Doc. 291-1 at 32-37).

13

Respondent contends that all those claims, except three, are procedurally defaulted because Movant did not raise them on direct appeal. (Doc. 301.) As noted above, Movant contends that he raised the claims in the appellate brief he personally filed and that any procedural default is excused by Stewart's unjustified failure to raise the claims in the appellate brief he filed.

## II.   Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered

14

as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004). "Actual prejudice" requires a movant to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997). Ineffective assistance of counsel may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do[.] . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and

15

that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.   Analysis

All of Movant's claims except the second – that he was improperly denied the right to represent himself at trial – and fourteenth – that Little rendered ineffective assistance – are procedurally defaulted because he did not raise those claims on direct appeal. Movant did not avoid the default by attempting to file in the court of appeals a brief he, rather than his appointed lawyer, drafted that raised those claims. That is

16

so because there is no constitutional right to represent oneself on direct appeal. *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154, 163-64 (2000). The court of appeals had authority to appoint a lawyer for Movant, as it did, and reject filings not submitted by that lawyer. *See id.*; 11th Cir. R. 25-1 ("When a party is represented by counsel, the clerk may not accept filings from the party.").

Movant relies on *Myers v. Johnson*, 76 F.3d 1330 (5th Cir. 1996), for his argument that his pro se appellate brief exhausted his claims. That reliance is misplaced because *Myers'* conclusion that a person had a right to file briefs on appeal pro se was based on that court's holding that a person has a "federal constitutional right to represent himself on direct appeal of his conviction." *Id.* at 1332-34 (concluding that because party "did not abandon his right of self-representation on direct appeal," he "did not abandon his right to present pro se briefs and motions on his . . . appeal"). *Martinez* invalidated the basis of *Myers* and made clear that there is no constitutional right to proceed pro se on appeal in any manner; indeed, the court that decided *Myers* has recognized that fact. *See United States v. Cockerham*, 396 F. App'x 66, 67 (5th Cir. 2010) (denying represented party's pro se motions because "[h]e has no constitutional right to self-representation on appeal" . . . "and he is not entitled to hybrid representation on appeal"). And courts have rejected the argument,

17

which Movant asserts here, that an appellate court's striking of a pro se brief constitutes cause to excuse a procedural default. *See, e.g., McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000) (finding that *Martinez* "[c]learly . . . contradicts the petitioner's assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel"); *Gore v. Crosby*, No. 3:03-cv-474-J-25, 2006 WL 4847609, at *32 (M.D. Fla. Jan. 31, 2006) (rejecting as "without merit" habeas petitioner's contention that the appellate court's "striking of . . . pro se pleadings denied him access to the courts and constitutes cause for the default" of claims presented in the habeas petition).

Ineffective assistance of counsel on appeal can excuse a procedural default. *Supra* Part II. Movant asserts that Stewart was ineffective for not raising on appeal all the claims Movant asserts in his § 2255 motion. As explained below, Movant has not shown that Stewart's failure to raise those claims amounted to constitutionally deficient performance or that there is a reasonable probability that any of the claims would have prevailed on appeal had Stewart raised them. Movant must make both showings to overcome the procedural default. *See supra* Part II.

18

A.   Claim One

Movant has challenged the Court's jurisdiction over him and this case since his arrest in 2011.  In his § 2255 filings, Movant argues that jurisdiction is "[t]he most important issue here."  (Doc. 305 at 3.)  The Court previously rejected the jurisdictional challenges as frivolous, and they remain frivolous.

Indeed, the Court found in 2012, before trial, that "[i]t is well settled that '[a] federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law.'"  (Doc. 136 at 9 n.4 (quoting *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003).)  Furthermore, at sentencing, the Court stated that it was "ruling right now we have jurisdiction so we are at an end with that topic."  (Doc. 253 at 45.)

"[C]ourts have repeatedly rejected as frivolous arguments that people are 'sovereign citizens' who are not subject to the jurisdiction of any courts."  *Walker v. Florida*, 688 F. App'x 864, 865 (11th Cir. 2017).  While Movant may not have spoken or written the phrase "sovereign citizen" in this case, his jurisdictional arguments mirror those of people who claim to be sovereign citizens, as the alleged lack of federal courts' authority to confine or try people for crimes is the core of such claims.  *See id.* ("[W]hile Walker did not state that he was a 'sovereign citizen,' his arguments

19

are similar to the 'sovereign citizen' arguments that courts have rejected as frivolous.").

The jurisdictional arguments in Movant's § 2255 filings are as frivolous as his earlier jurisdictional arguments. Movant claims that the reference in the indictments to the Northern District of Georgia is insufficient because it does not identify the special and maritime jurisdiction where the crimes occurred; that Respondent did not prove standing via the zone of interest test, which applies only in civil cases; that Respondent never established a definite and concrete justiciable controversy; that he was denied his right to plea by replacing his "pleas to the jurisdiction" with a plea of not guilty; and that the Court should have asked the jury pool his proposed jurisdictional questions and charged the jury on jurisdiction. (Doc. 291 at 33-41, 52-54, 63.)

To support those claims, Movant relies on inapplicable laws and takes those laws out of context. For example, Movant cites civil cases involving issues of subject matter jurisdiction and federal civil procedure. But "[t]he Federal Rules of Civil Procedure do not provide relief from judgment in a criminal case." *See United States v. Lee*, 525 F. App'x 918, 919 (11th Cir. 2013). Movant cites criminal cases involving only violations of 18 U.S.C. 2111, which applies only to a certain crime "within the

20

special maritime and territorial jurisdiction of the United States" and was not at issue in this case. *See id.* at 919-20 (concluding that federal prisoner's reliance on admiralty law to support his argument for release was "meritless to the point of frivolity" and that the prisoner "would not be entitled to § 2255 relief based on admiralty law"). Movant relies on the definition of "Firearms offense" in a provision of the U.S. Sentencing Guidelines, but that definition applied only to the crime of unlawfully entering or remaining in the United States and has been deleted from the guidelines. *See* U.S. Sentencing Guidelines Manual § 2L.1.2, Amends. 658, 802 (U.S. Sentencing Comm'n 2016).   Movant even cites definitions from the federal debt collection procedure and public buildings provisions of the U.S. Code, which are wholly inapplicable to this case. *See* 28 U.S.C. § 3002(15); 40 U.S.C. § 3112.

In contrast to those irrelevant and inapplicable laws, the federal criminal code provides that "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231.   Federal law provides that this Court is one of those district courts with such jurisdiction. 28 U.S.C. § 90(a).

In short, Movant's jurisdictional arguments remain completely frivolous. Given this Court's repeated rejection of those arguments as frivolous and the court of

appeals' repeated rejection of such arguments as frivolous, it was eminently reasonable for Little and Stewart not to raise the jurisdictional claims. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding that because claims lacked merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel").

B.   Claim Two

Movant contends that Little was forced on him without his authorization or any other authority. Movant contends that Little's appointment violated Georgia law and biblical principles. (Doc. 291-1 at 19-25.) Movant also contends that Little's appointment did not comply with the Criminal Justice Act, but cites no evidence to support that contention, and that his appointment was procedurally improper given the Court's lack of jurisdiction and Movant's desire to represent himself. The Court has reviewed the records of Little's appointment and does not find any violation of the Criminal Justice Act or other procedural law.

In any event, Movant's claim that Little was forced on him and that he was wrongly denied his right to represent himself at trial was litigated on direct appeal and cannot be relitigated under § 2255. The court of appeals rejected that claim, concluding that the Court properly found that Movant did not waive his right to

22

counsel and that the Court "did not err in denying [Movant] the right to self-representation." *Cartman*, 607 F. App'x at 890-91. "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation marks omitted). That is true even if the claim is recharacterized or presented under a different legal theory in § 2255 proceedings. *Id.*

C.   Claim Three

Movant contends that his right to a speedy trial was violated because more than seventy days of untolled time passed between his initial appearance and trial. Movant argues that Little's court filings did not toll the time because Little was not authorized to represent him and that tolling under the statutory "ends of justice" exception was inappropriate because the Court did not explain why such tolling was necessary.

On April 9, 2012, the undersigned issued a Report and Recommendation ("R&R") analyzing all of the time from the date of Movant's initial appearance on August 22, 2011 – the date the seventy-day clock began – until April 8, 2012. (Doc. 136.) The undersigned found that all but four of the days between those dates was excludable time under the Speedy Trial Act. (*Id.*); *see* 18 U.S.C. § 3161(c). The undersigned thus recommended that Movant's motion to dismiss for violation of the

23

Speedy Trial Act be denied. (Doc. 136.) The Court agreed and, at the start of trial, denied the motion. (Doc. 217 at 27.)

After trial, the Court entered an Order formally adopting the R&R and explaining why Movant's right to a speedy trial was not violated. (Doc. 248 at 27-30.) The Court analyzed the time period from the date the R&R issued to trial – April 9, 2012 to May 21, 2012 – and concluded that all of that time was excludable from the seventy-day clock. (*Id.*) Given the Court's pre- and post-trial rulings on the speedy trial issue, neither Little nor Stewart were constitutionally deficient for not further pressing the issue.

Nor were counsel deficient for not raising Movant's current claim that he was tried too soon after the superseding indictment issued. For that claim, Movant relies on the Speedy Trial Act's provision that "trial shall not commence less than thirty days from the date on which the defendant first appears" on an indictment. *See* 18 U.S.C. § 3161(c)(2).

Movant's claim that a defendant cannot be tried less than thirty days after a superseding indictment issues was rejected by the U.S. Supreme Court, and other federal courts, decades ago.

24

> Appellants contend that their Speedy Trial Act rights were violated because they were forced to trial only seventeen days after the superseding indictment was returned. *See* 18 U.S.C.A. sec. 3161(c)(2).[] The United States Supreme Court has determined that section 3161(c)(2) does not create a per se right to an additional thirty days of trial preparation when a superseding indictment is returned. *United States v. Rojas-Contreras*, 474 U.S. 231, 106 S.Ct. 555, 557, 88 L.Ed.2d 537 (1985).

*United States v. Watkins*, 811 F.2d 1408, 1410-11 (11th Cir. 1987).   "Section 3161(c)(2) does not create a per se right to an additional 30 days of trial preparation when a superseding indictment is returned."  *United States v. Gossett*, 877 F.2d 901, 905 (11th Cir. 1989); *see United States v. Rush*, 738 F.2d 497, 510 (1st Cir. 1984) (holding that § 3161(c)(2)'s requirement that trial not commence less than thirty days after defendant's first appearance does not apply to superseding indictment). Moreover, "[a] superseding indictment that issues more than 30 days after the arrest but before the original indictment is dismissed, does not violate § 3161(b)."[4] *United*

---

[4] On this issue, Movant cites a distinguishable case from Maine.  (Doc. 291-1 at 26.)  In *United States v. Davis*, the superseding indictment issued more than thirty days after the defendant's arrest and contained a charge that was in the original complaint but not the original indictment.  721 F. Supp. 2d 59, 59-60 (D. Me. 2010). The court dismissed the charge and, in doing so, distinguished a superseding indictment that "contains a charge that was neither in the complaint nor the original indictment." *Id.* at 60.  Unlike in *Davis*, the superseding indictment in this case added charges against Movant that had not been previously asserted.  *Davis*, which is not precedent in this circuit, does not provide any support for Movant's claim.  *Mosquera*, which is binding precedent, defeats the claim.

*States v. Mosquera*, 95 F.3d 1012, 1013 (11th Cir. 1996). Movant's speedy trial claims lack merit, and the Court previously found that Movant's right to a speedy trial was not violated.   Little and Stewart thus did not render ineffective assistance in not raising speedy trial claims.

D.     Claim Four

Movant was arrested on the indictment in this case in New York in August 2011. (Doc. 79.) A federal court in New York found Movant to be a flight risk given that he had been a fugitive for eight months and refused to recognize the jurisdiction of the federal courts. (Doc. 79-4.) That court thus ordered that Movant be detained pending trial. (*Id.*)

Movant contends that the detention order was erroneous and that he should have been released on bond because he did not have a history of escaping from custody. Even if that claim was not procedurally defaulted (it is), it cannot serve as the basis for relief from the judgment of conviction, or sentence, under § 2255 because Movant is no longer confined under the pretrial detention order. *See Kett v. United States*, 722 F.2d 687, 690 (11th Cir. 1984) ("[C]laims of excessive bail are not cognizable in a section 2255 action."); *United States v. Erickson*, No. 1:08cr10/RV/GRJ, 2015 WL 1061663, at *11 (N.D. Fla. Mar. 11, 2015) ("[T]he issue of Defendant's pre-trial

26

detention and the denial of a bond are not proper issues for § 2255 relief."); *see also United States v. Harris*, 546 F. App'x 898, 901 (11th Cir. 2013) ("§ 2255 does not offer relief from the non-custodial features of a criminal sentence.").

E.    Claim Five

Movant contends that insufficient evidence was presented at trial to support the jury's conviction on the five Possession Charges. Movant argues that he was never found within 1,000 miles of the firearms, which is a reference to where the guns were recovered – Boston and Rhode Island – and not where they were purchased – Georgia. Movant also emphasizes that only seven of the eighteen guns that were the subject of the Possession Charges were recovered.

Evidence is sufficient to support a conviction "if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Jiminez*, 564 F.3d 1280, 1284-85 (11th Cir. 2009) (quotation marks omitted). That standard is not directly applicable here, however, as Movant defaulted Claim Five by not raising it on appeal. Movant must show that his counsel was ineffective before the claim can be considered. Movant has not done so.

Little was not ineffective for failing to raise the issue because he did raise it. Little argued in his Rule 29 motion at trial, after all evidence had been presented, that

27

there was insufficient evidence to support the Possession Charges. (Doc. 219 at 155-56.) The Court denied the Rule 29 motion. (*Id.*)

As for Stewart, Movant has not shown that no reasonable lawyer would have failed to raise the issue on appeal. Nor has he shown that there is a reasonable probability that the court of appeals would have reversed the convictions on the Possession Charges had Stewart challenged those convictions.

Washington and Love testified that only Movant recruited them for the purchase of all eighteen firearms and only Movant contacted them to initiate each purchase. (Doc. 218 at 60-69, 72-76, 83, 86, 89-91, 94-96, 197, 201, 212.) Both testified that Movant told them the guns were going to be taken to Boston for sale. (*Id.*) Both testified that Movant lived with Shields, who took possession of fifteen of the guns immediately after purchase from the gun shows while Movant took possession of the other three. (*Id.*)

Love testified that she bought guns for Movant and Shields on four different dates and accompanied both of them on three to four separate trips to Boston after those purchases, in a van owned by Movant, with each trip lasting three to four days. (*Id.* at 200-02, 212, 224.) Love also testified that Movant instructed her to falsely report all fifteen guns as stolen. (*Id.* at 228.) All of that testimony from Washington

28

and Love, along with the other evidence that seven of the eighteen guns purchased were recovered in the Boston area, was sufficient to support Movant's conviction on all the Possession Charges.[5] *See United States v. Reeves*, 318 F. App'x 807, 809 (11th Cir. 2009) ("Evidence that some of the firearms in question were recovered at crime scenes in New Jersey shortly after their purchase in Georgia was probative of Reeves's possession of the firearms . . . .").

Movant challenges Washington's testimony that she gave him the three guns she purchased on the ground that the testimony "was not corroborated with the 'two witness rule.'" (Doc. 291 at 32.) No such rule applied in this case, and Movant has not cited any legal authority to the contrary. Washington's testimony about her personal interactions with Movant was alone sufficient, and the jury was entitled to believe her testimony. *See Jiminez*, 564 F.3d at 1285; *United States v. Albanes-Gomez*, 396 F. App'x 644, 645 (11th Cir. 2010) ("A jury is entitled to believe as much or as little of the witnesses' testimony as it finds credible . . . .").

---

[5] Movant emphasizes his "repeated claim" throughout this case "that he did not possess any of the charged 18 firearms." (Doc. 291 at 28.) Movant could have made that claim to the jury, but chose not to testify or present any other evidence to rebut the evidence that he possessed the guns.

29

Movant contends that the evidence was insufficient to show that he separately possessed the eleven guns that were purchased and not recovered because the only evidence regarding those guns were the ATF forms documenting the purchases. That is wrong. Washington and Love both testified that they purchased all eighteen guns, including the eleven that were not recovered, at Movant's sole direction. Movant makes his argument regarding simultaneous possession of the guns more fully in Claim Six, so the Court addresses that argument below. *See infra* Part III.F.

Finally, Movant contends that Respondent did not prove that the eleven unrecovered guns were firearms, as defined by federal law, because the serial numbers presented to the jury could have pertained to items other than firearms. This argument is frivolous. The ATF forms, the FFLs's testimony, and Love's and Washington's testimony established that all eighteen guns were, in fact, firearms. After the Court instructed them on the definition of a firearm under federal law, (doc. 219 at 170), the jury found that the items Love and Washington purchased for Movant were firearms. Respondent did not have to produce evidence that any of the eighteen guns was operable. *See United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir. 1998).

Movant has not shown that Stewart was constitutionally deficient for not raising on appeal the claim that Little unsuccessfully raised at trial – that the evidence was

30

insufficient to support the convictions for the Possession Charges. Nor has he shown a reasonable probability that the claim, which failed in this Court, would have succeeded on appeal. Movant's mere dispute of the damning evidence presented against him, particularly Washington's and Love's testimony, would not have been sufficient to overturn the jury's verdict on appeal. *See Jiminez*, 564 F.3d at 1285 ("[W]e assume that the jury made all credibility choices in support of the verdict.").

F.    Claim Six

Movant contends that the Court erred by not instructing the jury on jurisdiction. As discussed above, Movant's jurisdictional claims are frivolous. Little was not ineffective for not seeking the jury instructions Movant sought on jurisdiction, and Stewart was not ineffective for not asserting on appeal that the lack of such instructions was error.

Movant also contends that the Court's instructions improperly allowed the jury to convict him of the Possession Charges even if he simultaneously possessed all eighteen guns – or at least simultaneously possessed guns from more than one of the five § 922(g) counts. Movant relies on the rule "that multiple convictions under § 922(g)(1) for simultaneous possession by a felon of multiple firearms . . . violate the Double Jeopardy Clause." *See United States v. Norman*, 628 F. App'x 876, 879 (5th

31

Cir. 2015); *United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010) (noting that the law prohibits "giving the jury more than one opportunity to convict the defendant for the same offense").

"However, where a defendant has possessed different weapons at different times or places, the government may treat them as separate units of prosecution and charge multiple counts." *Jones*, 601 F.3d at 1259; *see United States v. Miller*, 156 F. App'x 281, 291 (11th Cir. 2005) (noting that an indictment can include multiple counts of unlawful possession even if the defendant merely "received the weapon [in one count] at a different time than the other weapons"). The evidence presented at trial was sufficient for a reasonable juror to conclude that Movant either actually or constructively possessed, solely or jointly with Shields, the guns in each of the Possession Charges (counts nine through thirteen of the superseding indictment) at different times.

As previously discussed, Washington and Love testified that the eighteen guns charged in the five Possession Charges were bought on five different dates from five different gun shows over the course of six weeks – three guns were bought on four dates and six guns were bought on the fifth date. The five purchases were each separated by at least seven days. Washington and Love both testified that Movant

32

lived with Shields during the time they made all the gun purchases, including Washington's testimony that she visited Movant at his home with Shields. Washington and Love also testified that they did not know each other and that Movant – and only Movant – contacted them before each purchase and coordinated each purchase. Washington testified that she gave the three guns she purchased to Movant, which was direct evidence of his possession of those guns.

Love testified that she gave the guns she purchased to Shields on each of the four dates she bought them, but that it was only Movant who initiated and coordinated each purchase and that Movant was at three of the four gun shows with her and Shields. Love further testified that Movant told her, before the purchases, that Shields was going to take the guns to Boston for sale. Love testified that during the same time period that she made the four purchases, she traveled to Boston with Movant and Shields in Movant's van on three to four different dates, that on each trip Movant brought duffel bags that could have carried guns, and that Movant and Shields were together at times in Boston without her. Movant's letter to Washington confirmed his travel to Boston in that time period and his intention to obtain guns from gun shows to fill orders for the guns and make money. Shortly after the purchases, Movant personally admitted to the ATF that he handled lots of guns.

33

All of that evidence, while largely circumstantial, was sufficient to support a finding that Movant at least constructively and jointly possessed the guns charged in each of the five Possession Charges on dates separate from his possession of the guns charged in the other four Possession Charges. It does not matter if guns charged in separate Possession Charges were recovered "at the same time and in the same location as other weapons charged in the indictment" or were "received by [Movant] at the same time as the other weapons." *See United States v. Bonavia*, 927 F.2d 565, 569 (11th Cir. 1991). Separate possession is what matters, and ample evidence was presented at trial of Movant's separate possession of the guns in each of the Possession Charges.

Movant wrongly contends that "constructive possession and joint possession are legal fictions." (Doc. 291 at 44.) It has long been the law that a firearm may be possessed actually or constructively and solely or jointly. *See United States v. Oscar*, ___ F. 3d___, No. 14-14584, 2017 WL 6513995 at *5 (11th Cir. Dec. 20, 2017) ("[T]he district court's initial charge correctly told the jury that the law recognizes several kinds of possession and that possession of a firearm may be either actual or constructive."); *United States v. Perez*, 661 F.3d 568, 576-77 (11th Cir. 2011).

34

For constructive possession, a firearm "need not be on or near the defendant's person," as the defendant need only be aware of the firearm's presence and have "intended to exercise dominion and control of the gun through another." *Id.* at 576. "This is true even if the defendant never intended to use the firearm himself – the defendant shares his coparticipants' intent and jointly possesses the gun as part of the criminal enterprise centering around possession of the gun." *Id.* at 577. "[T]he essence of constructive possession is the power to control the contraband itself." *Oscar*, 2017 WL 6513995, at *5 (quotation marks omitted). The evidence presented at trial showed that Movant had power to control the fifteen guns at issue in the Possession Charges because he recruited and directed Washington and Love to buy those guns, coordinated the purchase and delivery of the guns to either himself or Shields, and drove his vehicle with Shields and Love to the location (Boston) where he had previously said the guns would be taken.

The Court properly instructed the jury on the definition of "possession" for the Possession Charges and instructed them to consider each of those charges – each of the five § 922(g) counts – separately. (Doc. 219 at 169-71.) After explaining the difference between actual and constructive possession and sole and joint possession, the Court instructed the jury that "each count of the indictment charges a separate

35

crime" and that the jury "must consider each crime and the evidence relating to it separately." (*Id.* at 170-71.) The Court further instructed that the jury's "verdict on a particular count should not affect [its] verdict as to a different count." (*Id.* at 171.) As to the Possession Charges, the Court instructed the jury that it could not find Movant guilty of one of those counts unless it found beyond a reasonable doubt that Movant possessed "the *particular* firearm charged in the *particular* count of the indictment." (*Id.* at 169 (emphasis added).) Finally, the Court instructed the jury that mere presence is not sufficient for criminal liability, (*id.* at 169), and that its verdict must be based solely on the evidence, rather than speculation, sympathy, or prejudice, (*id.* at 157).

Movant has not shown that the jury instructions were improper under controlling law, much less that Little or Stewart were constitutionally deficient for not challenging the instructions. Nor has Movant shown that there is a reasonable probability that the outcome of the trial or appeal would have been different had counsel challenged the instructions here or on appeal.

G.    Claim Seven

Movant claims that all of the witnesses presented at trial other than Washington and Love were irrelevant and should not have been allowed to testify. Movant

36

contends that their testimony violated Federal Rules of Evidence 401, 403, and 404(b). Movant's arguments here are based primarily on all the witnesses, except Washington and Love, testifying that they did not know Movant and never saw him before trial.

The witnesses did not have to know Movant or have had personal contact with him to present relevant testimony on material issues. The FFLs' testimony was relevant to the issue of whether false statements were made to purchase the guns, and the testimony of those who managed the locations of the gun shows was relevant to the issue of Movant's involvement.[6] The law enforcement officers' testimony was relevant to the issue of why the guns were purchased and, in the case of the DeKalb County officers, to the issue of whether Movant possessed the guns. There was no basis for Little to object to the testimony on relevancy, materiality, or undue prejudice grounds, and thus no basis for Stewart to raise an evidentiary claim on appeal.

Movant contends that the Court improperly allowed the two DeKalb County police officers to testify about reports of domestic violence and cruelty to children at Shields' house, thus prejudicing Movant given that Shields did not testify. But neither officer mentioned domestic violence or cruelty to children, or even violence or

---

[6] The latter testimony actually helped Movant, as those managers testified that there was not any video recordings of Movant at any of the gun shows.

children.  (Doc. 219 at 4-7.)  The officers testified only that they responded to reports of "burglary" and "theft."  (*Id.* at 5-6.)  No statements from Shields were presented at trial, via testimony or otherwise.  There was thus no prejudice to Movant from the admission of "powerfully incriminating extrajudicial statements of a codefendant." *See Bruton v. United States*, 391 U.S. 123, 135-36 (1968).

Movant also complains that Washington's and Love's testimony about Movant's possession of guns not at issue in this case and his propensity to carry guns was improper character evidence.[7]  That testimony, which was very brief, was relevant to show Movant's intent to commit the crimes at issue in this case.  *See* Fed. R. Evid. 404(b)(2); *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence . . . ."); *see also United States v. Troya*, 733 F.3d 1125, 1132 (11th Cir. 2013) (affirming admission of evidence that defendants were involved in shootings because, while the shootings "were not intrinsic to any charged offense, they were admissible under Rule 404(b) to show [defendants'] intent to

---

[7] At trial, Movant personally stipulated to the admission of evidence that he unlawfully possessed a gun in the past and was convicted of doing so. *See infra* Part III.L.

possess firearms as related to the firearms charges in the indictment"). The testimony was not unduly prejudicial, particularly given that the jury heard that Movant twice told ATF Agent Stricklin that "he has handled a lot of firearms." (Doc. 219 at 33.)

The Court instructed the jury that it could consider the evidence of Movant's possession of other, uncharged, guns only for the limited purpose of showing his intent. (*Id.* at 162-63.) The Court also instructed the jury that Movant was not charged with any criminal conduct that may have been committed with the guns recovered in Boston and Rhode Island. (*Id.* at 163-64.) Neither Little nor Stewart were constitutionally deficient for not asserting Rule 404(b) claims.

Movant further contends that the Court improperly admitted a few written communications he had with Washington and Love and their testimony about those communications. The letter Movant wrote Washington while in the Cherokee County jail was properly admitted, as it contained relevant evidence about Movant's desire to obtain guns from gun shows to sell for money and his connection to Boston. (*See* Doc. 218 at 204-10; Doc. 257-8.) Movant's communications with Love via Facebook also were properly admitted because, as the Court concluded at trial, the communications showed Movant's awareness of the charges against him and his desire to flee to avoid those charges. *See United States v. Frazier*, 387 F.3d 1244,

39

1267 n.20 (11th Cir. 2004) (en banc) (noting that the court of appeals has "repeatedly held" that flight is evidence of consciousness of guilt).

Little objected at trial to admission of the Facebook communications and testimony about them. (*See* Doc. 218 at 127-48.) After much discussion, the Court overruled the objection and allowed the evidence. (*Id.*) The record refutes the claim that Little was constitutionally deficient in connection with this evidence or that Stewart was constitutionally deficient for not raising an evidentiary claim on appeal.

Finally, Movant asserts that he was denied the opportunity to present witnesses at trial. The transcript of the trial refutes that claim, and there is no evidence that Movant sought to present witnesses or was denied the opportunity to do so.

H.    Claim Eight

Movant contends that Respondent improperly vouched for ATF Agent Stricklin's credibility by having him testify and sit with Respondent's counsel throughout trial. Federal Rule of Evidence 615(b) allow a party's representative, even if a witness, to be present during other witnesses' testimony, and courts have long held that a law enforcement agent who serves as the government's representative may be present throughout a criminal trial. *See United States v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992) (rejecting claim that "the presence in the courtroom during trial of two

40

agent-witnesses was reversible error"); *United States v. Walker*, 613 F.2d 1349, 1354 (5th Cir. 1980) ("Allowing the DEA agent in charge of the case to remain at the prosecutor's table during the course of the trial was permissible . . . ."); *Santos v. United States*, No. 13-CV-3098 (ARR), 2014 WL 1653260, at *5 (E.D.N.Y. Apr. 24, 2014) (rejecting § 2255 movant's claim that presence of agent witness at government table throughout criminal trial violated the prohibition against the prosecution vouching for the credibility of its witnesses). Thus, counsel's decision not to object to Stricklin's presence during trial was not constitutionally deficient performance.

I.    Claim Nine

Movant complains that Respondent's counsel said in his opening statement at trial that "seven of these guns were recovered from crime scenes." (Doc. 217 at 47.) All seven law enforcement officers who recovered those guns testified about where they recovered the guns. Although not all seven were recovered from what might be fairly considered a "crime scene," there was nothing improper about the use of that term in opening statement. It was not unreasonable for Little not to object to the statement or for Stewart not to raise the claim on appeal. Moreover, Movant has not shown a reasonable probability that the outcome of his trial or appeal would have been different had either lawyer complained about the brief, isolated comment. *See Reeves*,

41

318 F. App'x at 809 (holding that "[e]vidence that some of the firearms in question were recovered at crime scenes in New Jersey shortly after their purchase in Georgia . . . was not so prejudicial, misleading, or duplicative as to warrant its exclusion").

Movant also contends that Respondent's counsel referred to violent drug gangs in his closing argument. That is not true. Respondent's counsel did not utter the words "violent" or "gang" in his closing argument. (Doc. 219 at 103-25, 140-47.) Respondent's counsel used the term "big drug lord" in his closing argument in illustrating the different roles people play in criminal enterprises. (*Id.* at 112.) Movant has not shown that no reasonable lawyer would have failed to object to that statement or that there is a reasonable probability that the outcome of the trial or appeal would have been different if there had been an objection.

J.   Claim Ten

Movant contends that the Court should have held a hearing to determine his competency to represent himself at sentencing and that its failure to do so violated *Pate v. Robinson*, 383 U.S. 375 (1966). *Pate* held that a trial court that has bona fide doubts of a criminal defendant's competence to stand trial must sua sponte conduct a competency hearing. *Id.* at 385-86; *see James v. Singletary*, 957 F.2d 1562, 1569-71 (11th Cir. 1992) (discussing *Pate* and the prohibition against trying an incompetent

42

defendant).  "A petitioner presenting a claim under *Pate* must first establish that the trial court should sua sponte have held a competency hearing."  *James*, 957 F.2d at 1571.

Movant contends that because the Court found him incompetent to represent himself at trial, it necessarily should have held a hearing to determine if he was competent to represent himself at sentencing.  But *Pate* addressed only competence to stand trial, not competence to stand trial pro se.  The Court did not find Movant incompetent to stand trial or incompetent to represent himself at trial.  The Court instead found that Movant had not validly waived his right to counsel at trial.  (*See* Doc. 245 (transcript of May 9, 2012 pretrial hearing) and Doc. 248 (Court's post-trial order explaining Court's *Faretta* ruling and decision to allow Movant to represent himself at trial).)  Indeed, Movant told the Court in hearings in late 2011 and early 2012 that he wanted to proceed with Little as his counsel, and he only seriously sought to represent himself in the days and weeks immediately before trial.  *Supra* Part I.

In allowing Movant to represent himself at sentencing, the Court noted that Movant behaved properly at trial and "interacted in a coherent way with the Court" at the end of trial.  (Doc. 248 at 23 n.4.)  The trial transcript confirms those facts.  After trial, Movant filed several motions pro se and demonstrated his understanding

43

of the issues for sentencing in response to the Court's pre-sentencing orders. (*Id.* at 22-25.)   The record shows that the Court did not doubt Movant's competency to represent himself at sentencing – which is a much different and less complex proceeding than a jury trial – much less doubt Movant's competency generally.

It thus was not unreasonable for Stewart not to raise on direct appeal a *Pate* claim, or any competency claim, regarding sentencing.  If Stewart had raised such a claim, there is not a reasonable probability that it would have prevailed.  The appellate standard of review for a district court's competency determinations is highly deferential: "A district court's denial of a . . . motion for a competency hearing, or its decision not to hold such a hearing sua sponte, is reviewed for abuse of discretion.  The decision whether to order [a competency] examination is also reviewed for abuse of discretion."  *United States v. Johns*, 390 F. App'x 963, 970 (11th Cir. 2010) (citations omitted).  Such decisions are "subject to reversal only for clear error."  *Id.* (quotation marks omitted).  There was no basis for a sentencing competency claim.

K.    Claim Eleven

Movant contends that in calculating the advisory range of imprisonment under the sentencing guidelines, the Court improperly added points for gun trafficking.  The Court found that Movant was responsible for at least eight guns, which was the

threshold for a four-point addition to the guidelines calculation, and that the evidence at trial supported the finding that the guns were disposed of with reason to believe that a person who could not lawfully possess them would get them. (Doc. 253 at 16-28.)

As he did in claims five and six, Movant argues that he never possessed the guns and that he was over 1,000 miles away from where they were recovered at the time they were recovered. As discussed above, the evidence was sufficient to support conviction on the Possession Charges and to support a finding that all the guns were taken to the Boston area. *Supra* Parts III.E, III.F. Movant has not shown that Stewart was constitutionally deficient for not challenging the calculation of the guidelines sentence range on appeal or that, if he had, there is a reasonable probability that the claim would have prevailed.

L.   Claim Twelve

At trial, Movant stipulated that he was a convicted felon based on prior felony convictions in Clayton and Cherokee counties. (Doc. 217 at 34-35; Doc. 219 at 63-64.) Indeed, the Court asked Movant directly if he "want[ed] to stipulate he was convicted of a felony as opposed to having the government introduce proof of that," and Movant said that he did. (Doc. 217 at 34-35.)

45

Despite that stipulation, Movant now claims that his prior convictions could not be used against him because he was not represented by counsel in the earlier case in Clayton County. Movant made that argument at sentencing, leading to a discussion and the Court's review of the records from the Clayton County case. (Doc. 253 at 35-41, 47-51.) Those records, which Movant again presented with his § 2255 motion, show that Dwight Thomas represented Movant in that case and was present at least during the proceeding where Movant pled guilty and was sentenced. (Doc. 291-1 at 57-61.) The Court reached that same conclusion at sentencing. (Doc. 253 at 51.) Based on the record, Stewart was not constitutionally deficient for not asserting on appeal that Movant's prior convictions were improperly used against him at trial or sentencing.

But even if there was some evidence to support Movant's claim that he pled guilty in Clayton County without representation (there is not), Movant cannot challenge the state conviction in federal court because he has not shown that he has exhausted his state-court remedies. A judgment of conviction entered in state court must be challenged through all available procedures in the state trial and appellate courts before it can be challenged in federal court. 28 U.S.C. § 2254(b)(1).

46

Movant summarily states that he exhausted his state-court remedies, but has never produced any evidence supporting that assertion in the more than seven years since Respondent told him it would use the state convictions against him in this case. Movant never presented a written statement from Dwight Thomas, the lawyer whom the records show represented him in Clayton County, or any other evidence. Furthermore, Movant has had over twenty years to challenge the Clayton County judgment in federal court if he exhausted his state-court remedies.

In short, the Court cannot consider Movant's challenge to his convictions in state court because there is no evidence he exhausted his remedies under state law for challenging those convictions. Even if Movant had exhausted those remedies, his claim that the Clayton County conviction is invalid for lack of counsel is refuted by the record, as the Court previously concluded.

M.    Claim Thirteen

Movant claims that the term of court expired before the Court entered its Judgment and Commitment because that judgment was entered more than ninety days after the sentencing hearing. Movant contends that his detention order had expired by that time and was not renewed.

47

The only legal authority Movant mentions in connection with this claim is his right to a speedy trial. But the right to a speedy trial ends after trial; there is no associated right in connection with sentencing. *Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016). Federal courts, unlike many state courts, do not operate in terms. *See* 28 U.S.C. § 452; *N. Cal. Power Agency v. Nuclear Regulatory Comm'n*, 393 F.3d 223, 224 (D.C. Cir. 2004) ("Revisions to the Judicial Code in 1948 ended the significance of terms of court; the federal courts are now 'always open,' and the expiration of a term or session 'in no way affects the power of the court to do any act or take any proceeding.'" (citing § 452)). Movant's claim that a term of court expired lacks any support in the law.

Nor is there any support for Movant's claim that his detention order expired after sentencing and before judgment was entered. Movant did not seek release after trial pending sentencing or entry of judgment, and the Court did not order such release. *See* 18 U.S.C. § 3143(a) (listing the findings a court must make to release a defendant pending sentencing). Nothing in the record supports a finding that Movant would have met his burden of showing that he should be released after the jury convicted him of all charges, much less that the Court would have released him if he or Little had sought such release. *See* Fed. R. Crim. p. 46(c) ("The burden . . . rests

AO 72A
(Rev.8/82)

with the defendant.")  Indeed, the Court found it proper to detain Movant without bond when he was only charged with, and not convicted of, the crimes.

There is no merit in the claims that the term of court expired before judgment was entered or that Movant should have been released pending sentencing or entry of judgment.  It thus was reasonable for Little and Stewart not to raise such claims.

N.   Claim Fourteen

Movant contends that Little rendered ineffective assistance before and during trial.  The Court discussed most of the alleged instances of Little's ineffectiveness above as part of Movant's claim that Little's ineffectiveness excuses the procedural default of his other claims.  The Court addresses the remaining instances here.

Movant contends that Little failed to investigate Respondent's witnesses before trial and to subpoena witnesses for trial.  But Movant does not identify what additional investigation Little should have done.  It has long been recognized that "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up." *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Little's cross-examination of Respondent's witnesses at trial, particularly his vigorous cross-examination of Washington and Love, refutes the claim that he did not investigate the witnesses and facts of the case. (*See* Doc. 301 at 31-32.) For example,

49

Little highlighted for the jury Washington's and Love's plea deals with Respondent and their motive to testify falsely. Little also established through the other witnesses that none of them knew Movant or could directly link him to the gun purchases or recoveries. The record demonstrates that Little was not constitutionally deficient in his pre-trial investigation.

Movant did not identify any witnesses he wanted to present at trial until he filed his reply brief in support of his § 2255 motion. In that brief, Movant stated that he wanted to call Washington's and Love's brothers as witnesses. (Doc. 305 at 9.) But in the seven years since this case began, Movant has never identified the subject of either person's proposed testimony, offered written statements from either of them, or otherwise shown that either would have offered relevant testimony helpful to Movant.

A § 2255 movant cannot satisfy his burden of demonstrating ineffective assistance of counsel with "unsupported allegations, conclusory in nature and lacking factual substantiation." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Movant has offered nothing more than that here.

Moreover, "[d]efense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim," particularly where, as here, there is no evidence that purported witnesses' testimony would have mitigated the abundant

50

evidence of guilt. *See United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see United States v. Long*, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). Movant has not shown deficient performance or prejudice in connection with Little's decision not to present witnesses at trial.

Movant also faults Little for trying to get Movant to stop filing motions pro se before trial and to accept a plea deal. Little's advice regarding pro se filings was very good advice, as demonstrated by the Court's multiple Orders rejecting those filings and admonishing Movant that he could not submit filings pro se while represented by counsel. The Court's finding that Movant did not validly waive his right to counsel for trial further shows that Little's advice in this regard was far from deficient.

Nothing in the record supports a finding that Little was deficient for purportedly attempting to persuade Movant to accept a plea deal or that Movant was prejudiced by that purported advice. Indeed, a plea deal could not have been any worse than the outcome of the trial, where the jury convicted Movant of all charges. Movant

51

contends that Little told him that Judge Carnes told Little that if Movant went to trial there would be a superseding indictment and Movant would get the maximum sentence if convicted. That is double hearsay, and there is no evidence in the record, from Little or otherwise, to support the contention. But even if true, the record demonstrates that Respondent's counsel told Movant at a hearing on September 7, 2011, just days after his initial appearance, that Respondent was seeking a superseding indictment that would increase his maximum sentence. (Doc. 273 at 3-4.) The record also demonstrates that despite Movant's conviction on all charges after a trial, the Court did not impose anywhere near the maximum sentence. (Docs. 249, 253); *see* 18 U.S.C. §§ 371, 924(a)(1), 924(a)(2).

Movant contends that Little was deficient at trial for allowing Movant to be shackled in view of the jury. There is no evidence in the record that any juror, during jury selection or later, ever saw the shackles on Movant's legs. The record supports only a finding that no juror saw the shackles.

Before the jury panel was brought to the courtroom, the Court held a long discussion with the parties about Movant's leg shackles. (Doc. 217 at 16-25, 33.) As a result of that discussion, the table at which Movant and Little sat was draped with a cloth (as was Respondent's table) and turned so that potential jurors in the gallery

52

and actual jurors in the jury box could not see Movant's legs. (*Id.*) The vantage points from the gallery and jury box were checked multiple times before the jury panel was brought to the courtroom, and it was confirmed that Movant's legs could not be seen. (*Id.*)

Moreover, Movant refused to wear civilian clothes offered to him and instead chose to remain in prison garb during trial. (*Id.* at 27-28.) That fact undermines Movant's frivolous claim that the presence of leg shackles the jury could not see somehow prejudiced him. *See United States v. Talley*, 315 F. App'x 134, 146 (11th Cir. 2008) (holding that "the wearing of [arm and leg] restraints presented no greater risk of juror prejudice . . . than the wearing of prison garb" where defendant "was given the option of wearing civilian clothes during the trial, [but] elected to wear his prison uniform"); *United States v. Battle*, 173 F.3d 1343, 1346-47 (11th Cir. 1999) (holding that court properly "conducted a hearing at which both attorneys were heard, considered alternative means . . . and then took reasonable steps to hide the chosen restraints from the jury: among other things, cloth was draped from the table to hide the [defendant's] leg shackles").

Movant's complaint about a toy train that Little kept at the defense table during trial also is frivolous. Little used the train to make a point to the jury in closing

53

argument about the weaknesses in Respondent's case. (*See* Doc. 219 at 125-26 (explaining that the train represented Respondent's theory of the case, which was its vehicle to take Movant to jail, but that there was not a matching ticket – evidence of guilt – for the trip). There was nothing improper about Little's arguments or the small aid he used to illustrate those arguments.

The U.S. Supreme Court has repeatedly emphasized that criminal defense counsel "should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and reminded courts to faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). "[T]he *Strickland* test 'has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted at trial.'" *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1299 (11th Cir. 2014) (quoting *Waters*, 46 F.3d at 1512). Movant has not overcome that strong presumption with regard to Little's representation before and during trial.

AO 72A
(Rev.8/82)

O.    Claim Fifteen

Movant contends that Stewart rendered ineffective assistance by not raising on appeal all the claims discussed above (except Claim Two, which he did raise).  The Court has explained why Movant has not shown deficient performance by Stewart or prejudice from Stewart's decision not to assert those claims.

Stewart did not assert on appeal that Little rendered ineffective assistance.  Under this circuit's precedent, that was not deficient performance because claims of ineffective assistance of counsel are appropriately presented in a § 2255 motion and not on direct appeal.  *United States v. Chester*, 650 F. App'x 725, 726 (11th Cir. 2016).

A final claim that Movant contends Stewart should have raised on appeal was that the Court improperly allowed Movant to proceed pro se at sentencing without finding that he had regained his competence.  This is a variation of Movant's *Pate* claim.  *See Supra* Part III.J.

As discussed in connection with the *Pate* claim, the Court never found Movant to be incompetent to represent himself at trial, sentencing, or any other time during this case.  *Id.*  Instead, the Court found that Movant did not validly waive his right to

55

counsel at trial. *Id.* Because there was not a meritorious competency claim, Stewart was not constitutionally deficient for not raising it.

Like his claim that Little rendered ineffective assistance, Movant has not surmounted *Strickland*'s high bar with regard to Stewart's representation. Movant has shown neither deficient performance nor a reasonable probability that he would have obtained a favorable outcome on appeal had Stewart raised additional claims.

P.    Claim Sixteen

Movant claims that he was denied access to the courts when the Court failed to docket filings he submitted for habeas cases he initiated after trial. Movant claims that he similarly was denied access when the court of appeals refused to accept the appellate brief he drafted and filed on his own behalf.

Prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). But that right is enforced through the civil rights laws, not the habeas corpus laws or 28 U.S.C. § 2255. *See id.*; *Lewis v. Casey*, 518 U.S. 343 (1996); *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). Movant thus cannot obtain relief under § 2255 on his claim that he was denied access to the courts. As explained above, Movant's claim regarding his appellate brief lacks

merit because he did not have a right to represent himself on appeal and the court of appeals decided that counsel would represent him. *See Martinez*, 528 U.S. at 163-64.

Q.    Claim Seventeen

Movant complains of his pretrial confinement in administrative segregation at the federal prison in Atlanta. Movant claims that the food and medical care and the time for showers, the library, and telephones were inadequate; there was no exercise equipment or outside recreation; he could not access group religious services; and prison guards retaliated against him.

Like Movant's claim that he was denied access to the courts, none of those claims are cognizable under § 2255. Claims that challenge the legality of custody "fall within the 'core' of habeas corpus," while "claims that merely challenge the conditions of a prisoner's confinement . . . fall outside of that core." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *see Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991) ("Section 2255 is not applicable to [conditions of confinement] claims."). Movant cannot obtain relief under § 2255 for allegedly unconstitutional conditions of pretrial confinement.

AO 72A
(Rev.8/82)

## IV.   Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a COA should issue "only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the

58

district court was correct in its procedural ruling." *Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quotation marks omitted).

A COA is not warranted here because it is not reasonably debatable that Movant is not entitled to relief on his claims. All of Movant's claims except his claim that Little rendered ineffective assistance were procedurally defaulted because they were either not raised on direct appeal or were decided by the court of appeals. Movant has not shown ineffective assistance of counsel to overcome the default, as his claims are unsupported by the record and, in some cases, frivolous.

## V.   Movant's Motion To Expand The Record

One year after he filed his § 2255 motion, Movant filed a one-page motion for leave to expand the record "to add affidavits in support of his [§ 2255] motion." (Doc. 307.) Movant did not identify or produce the affidavits. (*Id.*) Nor did Movant identify the substance of the purported affidavits, or mention any such affidavits in his § 2255 filings. (*Id.*; *see* Docs. 291, 291-1, 305.)

Over six years have passed since Movant was arrested and appeared in this case. Over five years have passed since trial, four years since judgment, and one year since Movant sought relief under § 2255. That is ample time for Movant to have produced any affidavits that he believes are relevant to this case. Because Movant has not done

59

so and the record flatly contradicts his claim to relief under § 2255, Movant's motion

to expand the record will be denied.

## VI.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to

vacate sentence under 28 U.S.C. § 2255 [291] and a certificate of appealability be

**DENIED** and that case number 1:16-cv-4511-ELR-LTW be **DISMISSED**. Movant's

motion for leave to expand the record [307] is **DENIED**.

**SO ORDERED & RECOMMENDED** this *19* day of *January*, 2018.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

60